# UNITED STATES DISTRICT COURT

for the

District of Maryland

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

163 Winter Harbor Drive,
Ocean City, Maryland, 21842

Case No.

10-3798 JKB

)
)
)
)
)
)

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ————————— District of  Maryland
*(identify the person or describe the property to be searched and give its location):*
**See Attachment A**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B which is attached hereto and incorporated herein by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before ___10/19/10___
*(not to exceed 14 days)*

☒ in the daytime  6:00 a.m. to 10 p.m.          ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
James K. Bredar
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐ for _____ days *(not to exceed 30).*
☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  10/5/10    4:52 PM          *(Judge's signature)*

City and state:   Baltimore, Md          James K. Bredar, United States Magistrate Judge
*Printed name and title*

SCANNED

Bode00061

AO 106 (Rev. 04/10) Application for a Search Warrant

UNITED STATES DISTRICT COURT

for the

District of Maryland

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

**163 Winter Harbor Drive, Ocean City, Maryland, 21842**

Case No.   10-3798 JKB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ Maryland _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252A(a)(2) and 2252A(a)(5)(b). | Receipt and Distribution of Child Pornography and Possession of Child Pornography. |

The application is based on these facts:

See attached Affidavit of Special Agent Elizabeth Warchol, which is attached hereto and incorporated herein by reference.

☒ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Elizabeth Warchol
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   10/5/10

_____
*Judge's signature*

City and state:   Baltimore, Md.

James K. Bredar, United States Magistrate Judge
*Printed name and title*

Bode00062

10-3798 JKB

## AFFIDAVIT

I, Elizabeth Warchol, being duly sworn, do hereby depose and state:

### I.   INTRODUCTION

1.   I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), currently assigned to the Resident Agent in Charge ("RAC") Ocean City, Maryland.  I have been employed since April 2009.  As a result of my employment, I received necessary training at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. While attending FLETC from April 2009 through September 2009, I successfully completed the Criminal Investigator Training Program (CITP) and also the Immigration and Customs Enforcement Special Agent Training (ICESAT) program, which includes training in criminal investigations related to child pornography.  Prior to this, I was employed with the City of Leesburg, Lake County, Florida, as a police officer assigned to the road patrol division from August 2001 through February 2009.

### II.   PURPOSE OF AFFIDAVIT

2.   This affidavit is made in support of a warrant to search 163 Winter Harbor Drive, Ocean City, Maryland, 21842 (the "SUBJECT PREMISES") described further in Attachment A, and to

1



**SCANNED**



Bode00063

10-3798 JKB

seize evidence, as specified in Attachment B of this affidavit, of violations of 18 U.S.C. Section 2252A(a)(2) (receipt and/or distribution of child pornography) and 18 U.S.C. Section 2252A(a)(5)(B) (possession of child pornography).

3.     The facts set forth in this affidavit are based upon your affiant's personal observations and training, prior investigations and where noted, information related to me by other law enforcement officials and witnesses.  The affidavit is intended to show that there is probable cause for the requested search warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter.

### III.   **BRIEF SUMMARY**

4.     As set forth in greater detail below, ICE has been investigating a website called www.Free6.com ("Free6"), which has an Internet chat function that allows users of the site to chat on-line and trade images with each other.  No registered account is necessary for an Internet user to chat on Free6, all one has to do is log on to the website and select a screen name for that chat session.  Since there is no requirement that the person selects the same screen name used previously, the same individual could have multiple screen names.

5.     As set forth below, on January 26, 2010, records show

Bode00064

10-3798 JKB

that a computer assigned IP address 173.13.192.238, which was using screen name "DadonCam," accessed Free6 chat rooms and posted images of child pornography.

**IV.**  **PROBABLE CAUSE**

**A.**  Background Investigation conducted on Free6

6.    Los Angeles ICE SA Neil Burdick, of the Child Exploitation Investigations Group (CEIG), has advised me that while proactively monitoring the Internet for violations related to federal child exploitation statutes, he discovered a publicly accessible website known as "www.Free6.com."  This website offered some items for free viewing, such as images and links to various adult pornography websites.  The Free6 website also offered a special "chat" feature where users were able to access an assortment of different "rooms."  In these Free6 chat rooms, a user was able to hold online text conversations, post messages, photos, graphics etc., to the entire room.  A user was also able to have "private" chats that were visible only to a specific user.  This affidavit describes the posting of child pornography through this chat function on Free6.[1]

7.    For a Free6 user to access any of the Free6 chat

---

[1]  At any given time there could have been thousands of users on the Free6 website using the chat function.  For example, on September 25, 2009 at 2:40 p.m., SA Burdick noted that there were 1,400 people logged in to Free6 chat rooms.

3



Bode00065

10-3798 JKB

features, the user had to go through a number of steps.   First, the user would go to the main Free6 home page, and click on a button labeled "chat."   That took the user to a webpage where s/he was required to indicate whether s/he was male or female, and then select a screen name for that chat session.   Free6.com did not require users to enter their true identity or to register in any way with the website.   The screen name did not act as any sort of permanent account; it was only valid for the user's current chat session.   Users were able to use different screen names each time they logged into the chat portion of the website.   The webpage on which a user selects a screen name also showed the following warning banner:

> The Free6.com Chat rules Posting photos, graphics or cartoons showing persons under 18 years of age is not allowed.   Child pornography or other illegal material will immediately be reported to the posters local authorities. Requesting images of the above nature is not allowed.   Spamming or advertising for websites or products is not allowed.   Users breaking these rules will be banned.   All posted pictures and conversations, public and private, are logged and supervised.

8.   After the user entered a screen name, the second step required him/her to click on a button that said "Log In."   This took the user to a second warning banner.   This page featured a picture of a young girl and the words:

4

Bode00066

10-3798 JKB

CHILD PORNOGRAPHY…
BEHIND EVERY PICTURE THERE IS PAIN!

HELP US REPORT IT!

Posting photos, graphics or cartoons showing
persons under 18 years of age is not allowed.
Child pornography or other illegal material will
immediately be reported to the posters local
authorities.  Requesting images of the above
nature is not allowed.  All posted pictures and
conversations, public and private, are logged
and supervised.[2]

9.    The third step required a user to click on a button

marked "ACCEPT," which was underneath the above posted warning,

to proceed to the chat portion of the website.  Thus, each time

a user wished to chat on Free6, s/he must first have viewed the

warning, including the sentence that Free6 may disclose the

communications to the authorities, and indicated that s/he

accepted it.  One was not able to use the chat function by

bypassing the warning, because even if a user had the specific

Internet address of the chatroom, they would have had no screen

name to chat under.[3]

---

[2] These warnings remained unchanged from the time SA Burdick first
accessed the site in October 2008 until February 13, 2009.  From
February 13, 2009, until February 26, 2010, when the website was shut
down, the following language was added: "Free6.com may disclose these
communications to the authorities at its discretion."  The last time
SA Burdick logged onto Free6, and saw the warning, was on February 25,
2010.

[3]    A user only needs a screen name to use Free6's interactive chat
functions.  A user can browse the website portion without obtaining a

5

Bode00067

10-3798 JKB

10.   SA Burdick first entered the Free6 chat rooms in October 2008.  Despite the warnings against posting child pornography, however, SA Burdick noticed that many of the users appeared to be posting images containing child pornography. These posts were in the public chat rooms, available to anyone who logged onto Free6.

11.   On October 7, 2008, SA Burdick contacted the administrators of Free6 via email, asking for help in identifying the IP Addresses of the individuals posting child pornography.  SA Burdick informed your affiant that Free6 was cooperative with law enforcement efforts, and that they volunteered to assist ICE in identifying individuals trading child pornography on the website.  Sometime in October 2008, Free6 gave ICE an administrative password, granting law enforcement access to the administrator's section of Free6. This allowed agents to see the IP Addresses of the persons making posts on Free6.  It also gave law enforcement the ability to review all traffic taking place in the Free6 chat rooms, both public and private chats.[4]  SA Burdick told your affiant that he

---

screen name, and without accepting the particular warning outlined above.  This affidavit pertains to the posting of child pornography through the chat function.

[4] Chat rooms on Free6 are "public" when any user may join a particular chat session.  They are "private" when individual users open their own chat streams with another user, or users, of their choice.  These

Bode00068

10-3798 JKB

noticed a significant amount of child pornography being traded on Free6 in private chats.  In addition, it is your affiant's understanding that Free6 logged all chats/posts for one week, and your affiant understands that they were indefinitely logging all chats/posts which were the subject of user complaints.[5]  With the administrative password, law enforcement officials were able to view all logged chats/posts made from the same screen name or the same IP Address.

12.   On February 26, 2010, Los Angeles CEIG Special Agents noticed that both the main and chat portions of www.free6.com had been removed from the internet by the company responsible for hosting the website.[6]



---

"private" chats are invitation-only.
[5]  For example, if a Free6 user saw a post that contained child pornography, s/he could report that post to Free6 as a violation of the rules.  The reported post would then be kept by Free6 indefinitely, and law enforcement could review the user's conduct. The activity in question was stored by IP address.
[6]  A website hosting company allows clients to make their websites available to others via the World Wide Web.

Bode00069

10-3798 JKB



13.   As a result of the investigation into child pornography being posted on the Free6 website to date, there have been 218 targets identified and a total of 116 enforcement actions, including search warrants, knock and talks, and lawful border searches; nearly all have resulted in the recovery of child pornography.  To date, there have been a total of 19 convictions (17 Federal, 2 State), and 20 matters are currently charged (19 Federal, 1 State).  Among those targets, five contact offenders have been discovered.  By way of example, RAC Fresno, CA served a search warrant at the home of a U.S. Army veteran who was actively molesting his 9 year old daughter and posting nude pictures of her on www.free6.com. A marijuana grow was also found at the suspect's house. He was arrested pursuant to information obtained during the search warrant. Additionally, SAC Denver, CO served a search warrant at the home of a 22 year old man who was not only posting child pornography but also soliciting on www.free6.com for people to come to Colorado and rape and kill his younger sister. The younger sister was rescued

8



Bode00070

10-3798 JKB

and the man was arrested pursuant to information obtained during
the search warrant.

B.  IP Address Posted Multiple Child Pornography Images on
Free6 Using Multiple Screen Names

14.  With regard to this specific target, on January 26,
2010, agents memorialized the content of the "www.Free6.com"
website utilizing administrator privileges and screen captures.
On that day, law enforcement observed a user connected to the
website via IP Address 173.13.192.238 (the TARGET IP ADDRESS)
who had posted a visual depiction with the title "~2spal02.jpg"
to another user in a "Free6" chatroom.  The image contains two
pictures, side-by-side, and a copy has been provided to the
Court for review.  Those pictures (Exhibit A) are described as follows:

   a. The picture on the right shows an unidentified adult
      white female sitting on an unknown object.  The adult
      female's torso is bare and her left breast is exposed.
      There is an unidentified white prepubescent female,
      approximately 8-10 years old, sitting on the right
      side of the adult female's lap.  The prepubescent
      child is naked, her legs are apart, and the focal
      point of the image is the minor prepubescent female's
      vagina which is being displayed in a lewd and

9


Bode00071

10-3798 JKB

lascivious manner.

b. The picture on the left shows the same adult female and prepubescent child standing up.  The adult female is only wearing knee-high white socks and white shoes. The prepubescent child is only wearing knee-high white socks and brown sandals.  In this picture, the prepubescent child is using both her hands and is squeezing both exposed breasts of the adult female. The child is facing the adult while squeezing the adult's breasts.  The child's genital area is not readily exposed in this particular picture.

15.  Further review of "www.Free6.com" website logs showed that an individual using the same TARGET IP ADDRESS had posted the same visual depiction with the same title on five separate occasions, using the screen name "DadsHere" or "DadonCam," as follows:

| DATE | Screen Name Used By Target IPA To Post Image | Screen Name Of Individual That The Image Was posted To |
|------|-----------------------------------------------|--------------------------------------------------------|
| 1/21/10 | DadsHere | mom36whipsgirl11 |
| 1/21/10 | DadsHere | DreamsOf-Incest |
| 1/25/10 | DadonCam | MomDau |
| 1/26/10 | DadonCam | Mette33 |
| 1/26/10 | DadonCam | Mother31daughter10 |



Bode00072

10-3798 JKB

16. Another picture was posted eight times by the Target IP Address. This picture, entitled "- 11 radator.jpg", a copy (Exhibit B) of which has also been provided to the Court for review, was posted to the entire "Free6" chatroom. The image depicts two naked minor females, one standing behind the other, where each is touching the other's pelvic area, and both are facing the camera. This image was posted as follows:

| DATE | TIME | Screen Name Used By Target IPA To Post Image | Screen Name Of Individual That The Image Was posted To |
|---|---|---|---|
| 1/21/10 | 07:40am | DadsHere | (posted to room) |
| 1/21/10 | 07:52am | DadsHere | (posted to room) |
| 1/21/10 | 08:04am | DadsHere | (posted to room) |
| 1/21/10 | 09:45am | DadsHere | (posted to room) |
| 1/25/10 | 07:46am | DadonCam | (posted to room) |
| 1/25/10 | 08:19am | DadonCam | (posted to room) |
| 1/26/10 | 07:04am | DadonCam | (posted to room) |
| 1/26/10 | 09:11am | DadsHome | (posted to room) |

17. In addition, on those same dates, an individual using the same TARGET IP ADDRESS and the same two screen names posted a photograph of an older white male, who identified himself as "larry", in several chat comments. During the investigation, a Motor Vehicle Administration (MVA) photograph of Laurence John Bode of 163 Winter Harbor Drive, Ocean City, Maryland, 21842, was obtained and determined to be the same individual as the image posted.

18. Further, your affiant has reviewed multiple chat

11

Bode00073

10-3798 JKB

comments posted by the user utilizing the TARGET IP ADDRESS
between 01/19/2010 and 01/26/2010.  Since the chats are logged
by IP address, your affiant was only able to review the chats
and files posted by TARGET IP ADDRESS during that time frame,
i.e., one side of the chat session only.  A sampling follows:

    c. "yes but not active to scared to act", "you active or
       just thoughts", "love the erotic pics", "Don't we all
       but to scared", "hi im larry", "Hi im Larry in
       Maryland on the Water", "you active or curious",
       "thats me", "im Larry in Maryland USA", "admire from
       afar", "I live on water see lots of young", "young
       dreaming but not active", and "what are u into".

**CHARACTERISTICS COMMON TO INDIVIDUALS INVOLVED IN RECEIVING
CHILD PORNOGRAPHY AND WHO HAVE A SEXUAL INTEREST IN CHILDREN AND
IMAGES OF CHILDREN**

    19.  In addition to the two images described above which
were posted on thirteen separate occasions, the same Target IP
Address was also utilized to post multiple images of child
erotica[7] in the context of the same chats and on-line sessions.

---

[7]"Child Erotica" means materials or items that are sexually arousing to
persons having a sexual interest in minors, but that are not, in and
of themselves, obscene or illegal.  In contrast to "child
pornography," this material does not necessarily depict minors in
sexually explicit poses or positions.  Some of the more common types
of child erotica include photographs that are not sexually explicit,
drawings, sketches, fantasy writing, and diaries.  See Kenneth V.

12



Bode00074

10-3798 JKB

For example, one image entitled "__ohmom2-5.jpg" was posted 3 times by the Target IP address to other users of the "Free6" chatroom.  This image depicts a naked minor female sitting on top of a naked adult female while grabbing her breasts.  This image was posted as follows:

| DATE | TIME | Screen Name Used By Target IPA To Post Image | Screen Name Of Individual That The Image Was posted To |
|------|------|----------------------------------------------|--------------------------------------------------------|
| 1/21/10 | 07:46am | DadsHere | mom36whipsgirl11 |
| 1/21/10 | 07:59am | DadsHere | Marianne 42 |
| 1/25/10 | 07:54am | DadonCam | mother |

Another image entitled "7467170361076415882854544235710 5.jpg" was posted 1 time by the Target IP address to the entire "Free6" chatroom.  This image depicts two minor females, both naked and laying on a bed with a blue cover, side by side, with their heads nearest to the camera, and their breasts exposed, posed in an unnatural manner.  This image was posted as follows:

---

Lanning, Child Molesters: A Behavioral Analysis (2001) at 65.  Federal courts have recognized the evidentiary value of child erotica and its admissibility in child pornography cases.  See *United States v. Cross*, 928 F.2d 1030 (11th Cir. 1991) (testimony about persons deriving sexual satisfaction from and collecting non-sexual photographs of children admissible to show intent and explain actions of defendant); *United States v. Dornhofer*, 859 F.2d 1195, 1199 (4th Cir.1988) (upholding admission of child erotica evidence against Rule 403 challenge because possession of such material made defendant's claim that he ordered child pornography by mistake less probable); see also S.Rep. No. 104-358, at 12-13 (1996) ("Law enforcement investigations have verified that pedophiles almost always collect child pornography or child erotica.").



Bode00075

10-3798 JKD

| DATE      TIME | Screen Name Used By Target IPA To Post Image | Screen Name Of Individual That The Image Was posted To |
|---|---|---|
| 1/25/10   07:56am | DadonCam | (posted to room) |

20.   Based on my previous investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who utilize web based bulletin boards to view and receive multiple images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals:

a. Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b. Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including



Bode00076

10-3798 JKB

photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.  Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Individuals who have a sexual interest in children or images of children almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.  Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a

15

Bode00077

10-3798 JKB

safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the individual to view the collection, which is valued highly.

e. Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. Individuals who would have knowledge on how to access a website, like Free6, to post child pornography to others would have gained knowledge of its location through online communication with others of similar interest. Other forums, such as bulletin boards, newsgroups, IRC chat or chat rooms have forums dedicated to the trafficking of child pornography images. Individuals who utilize these types of forums are considered more advanced users and therefore more

16



Bode00078

10-3798 JKB

experienced in acquiring a collection of child pornography
images.

       g. Individuals who have a sexual interest in
children or images of children prefer not to be without their
child pornography for any prolonged time period.  This behavior
has been consistently documented by law enforcement officers
involved in the investigation of child pornography.

   21.  In addition, computer files or remnants of such files
can be recovered months or even years after they have been
downloaded onto a hard drive, deleted, or viewed via the
Internet.  Electronic files downloaded to a hard drive can be
stored for years at little to no cost.  Even when such files
have been deleted, they may be recoverable months or years later
using readily available forensic tools.

       a.   When a person "deletes" a file on a home
computer, the data contained in the file does not actually
disappear; rather, that data remains on the hard drive until it
is overwritten by new data.  Therefore, deleted files, or
remnants of deleted files, may reside in free space or slack
space that is, in space on the hard drive that is not allocated
to an active file or that is unused after a file has been
allocated to a set block of storage space for long periods of

17



Bode00079

10-3798 JK3

time before they are overwritten.

b.   In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache.  The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.

c.   The storage capacity of personal computers has increased dramatically over the last few years.  Common and commercially available hard drives are now capable of storing over 500 GB of data.  With that amount of storage space, an individual could store thousands of video files and/or hundreds of thousands of image files.

d.   Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.  Since the storage capacity of hard drives has increased dramatically over the last several years, it is more likely that the above described information will be recovered during forensic

18

Bode00080

10-3798 JKB

analysis.

22.  As courts have repeatedly held, collectors, and those involved with the distribution of child pornography more generally, hold onto their collections of child pornography for extended periods of time.  See e.g., *United States v. Richardson*, 2008 WL 818863 (W.D.N.C. 2008), aff'd, -- F.3d --, 2010 WL 2340233 (4th Cir. 2010)(holding that information that was two months to seventeen months old was not stale because the warrant included information that the defendant transmitted child pornography using his AOL e-mail in June 2004 and September 2005 and had a criminal history of sex offenses involving children); *United States v. Sassani*, 139 F.3d 895 at *5 (4th Cir. 1998) (unpub) (sixth-month-old information revealing that the defendant transmitted several images of child pornography between 1994 and 1995 provided sufficient grounds for probable cause); United *States v. Sherr*, 400 F. Supp. 2d 843, 847 (D. Md. Nov. 16, 2005) (finding that eight-month-old information indicating that the defendant had received images of child pornography to his AOL account and that the defendant expressed his interest in trading nude pictures of preteens to an undercover agent online was not stale, noting collector characteristics); *United States v. Ramsburg*, 114 Fed. App'x 78,


Bode00081

82-83 (4th Cir. 2004) (holding that six-year-old information regarding the defendant's transmission of one image of child pornography to an undercover agent was not stale where the warrant application also included facts regarding the defendant's membership in two child pornography Internet groups in 2000 and 2001, reasoning that the defendant's transmission of child pornography bolstered the allegation that he participated in the Internet groups to download child pornography since because it evidenced an interest in the material which was likely to still be on his computer).

23. Based on traits shared by collectors, the ability of a forensic analyst to find data long after it has been deleted, and the increased storage capacity of computers over time, there exists a fair probability that evidence regarding the distribution, receipt and possession of child pornography will be found at the target residence notwithstanding the passage of time. In addition, based on this target's activity, detailed above, which consisted of posting of two files containing child pornography on thirteen separate occasions and two visual depictions of child erotica on four separate occasions, there is reason to believe he has collected at least two images of child pornography and two images of child erotica, and has also

20


Bode00082

10-3798 JKB

distributed child pornography.  Further, given the screen name

being used by the Target IP Address ("DadsHere" and "DadonCam"),

the screen names of the individuals the images were posted to

(e.g., "Mother31daughter10", "mom36whipsgirl11", and "DreamsOf-

Incest"), and based on the text of the chat sessions associated

with the Target IP Address (e.g., "yes, but not active to scared

to act", "you active or just thoughts", and "young dreaming but

not active"), there is reason to believe this same target has

engaged in discussions with others that share a sexual interest

in minors, and is involved with trading images of child

pornography.

C.    Identification of the SUBJECT PREMISES

24.  On or about April 12, 2010, in response to a subpoena

issued by law enforcement, Comcast provided the subscriber

information for the IP Address 173.13.192.238.  Comcast reported

that the IP Address on the date and time that the file in

question was posted was leased to Comcast customer Larry Bode,

and that the service of this IP Address was physically being

provided to 163 Winter Harbor Drive, Ocean City, Maryland, 21842

(the Subject Premises).  This information was forwarded to your

affiant for review.

25.  On July 07, 2010, your affiant conducted a check on a



Bode00083

10-3798 JKB

database called "CLEAR" for the 163 Winter Harbor Drive, Ocean
City, Maryland, 21842.  "CLEAR" consolidates public records
including addresses, driver licenses, property deed transfers
and corporate information.  According to "Clear," Laurence Bode
is associated with this address.

26.  On July 07, 2010, your affiant observed a green four-
door vehicle marked "Casino Express Taxi" with Maryland license
plate 46704B in the driveway of the Subject Premises.  See
Attachment A.  According to DMV records, the car is registered
to Laurence John Bode of 163 Winter Harbor Drive, Ocean City,
Maryland, 21842.  A criminal history check, by name only, of
Laurence John Bode, showed no known criminal history.

27.  On August 26, 2010, an administrative subpoena was
served on Comcast who responded that IP address 173.13.192.238
is active and currently statically assigned to Granite BB and T,
which is a business in Martinsburg, West Virginia.

28.  On September 08, 2010, an administrative subpoena was
served on Comcast to inquire about service provided to 163
Winter Harbor Drive, Ocean City, Maryland, 21842.  Comcast
responded that at the Subject Premises, records reflected
customer Larry Bode, and the account status was disconnected as
of April 12, 2010.

Bode00084

10-3798 JKB

29.   September 09, 2010, an administrative subpoena was served on eBay/PayPal seeking any/all records maintained and associated with the name Laurence Bode and/or Larry Bode; the address 163 Winter Harbor Drive OC MD; and/or the email addresses larry-loans@hotmail.com, larrybode410@comcast.net, and larry_loans@yahoo.com.   eBay/PayPal responded that their records reflected registration information with User ID "nobde04", email address "nbode02@aol.com, with contact information of Nicola Thyen-Bode, and shipping address 163 Winter Harbor Drive, Ocean City, Maryland, 21842.   The registration information also provided a "Billing History", via Discover Credit Card #6011002870648490, for Larry Bode at 163 Winter Harbor Drive, Ocean City, MD, 21842.   Records show Account Information for Nicola Thyen-Bode, via IP Address 76.111.142.24, logging into PayPal on April 30, 2010 at 05:19:11 PDT and August 22, 2010 at 10:40:25 PDT.   Your affiant discovered that IP Address 76.111.142.24 was owned by Comcast.

30.   On September 16, 2010, surveillance was conducted and began at 163 Winter Harbor Drive, Ocean City, Maryland, 21842 (the Subject Premises).   ICE Agent(s) observed a white male exit the second floor of the residence, walk down the stairs, and enter the driver side of a green four-door vehicle marked

Bode00085

10-3798 JKB

"Casino Express Taxi" with Maryland license plate 46704B which was parked in the driveway (the Subject Premises).  ICE Agent(s) maintained visual contact with the vehicle and were able to positively identify the driver as Laurence John Bode via a copy of his Motor Vehicle Administration (MVA) photograph.

31. On September 24, 2010, an administrative subpoena was served on Comcast with regard to IP Address 76.111.142.24 and the dates indicated supra at paragraph 27.  Comcast responded that on those dates, IP Address 76.111.142.24 was leased to Comcast customer Larry Bode, 163 Winter Harbor Drive, Ocean City, Maryland, 21842 (the Subject Premises).  Comcast also indicated that the account status was active at the Subject Premises as of September 24, 2010.

**CONCLUSION**

For all the reasons described above, there is probable cause to believe that evidence of violations of Title 18, United States Code, Sections 2252A(a)(2) and 2252A(a)(5)(B), as described above and in Attachment B of this affidavit, will be

24

Bode00086

10-3798 JKB

found in a search of the Subject Premises, as further described
above and in Attachment A of this affidavit.

_____
Elizabeth Warchol, Special Agent
Department of Homeland Security
U.S. Immigration & Customs Enforcement

Subscribed and sworn to before me
this _____5_____ day of October, 2010.

_____
The Honorable James K. Bredar
United States Magistrate Judge

25

Bode00087

10-3798 JKB

## ATTACHMENT "A"

Premises to be Searched:

**163 Winter Harbor Drive, Ocean City, Maryland, 21842**

The SUBJECT PREMISES is further described as a two-story house with a driveway in front and a one car garage with the number "163" above it.  The bottom level is concrete and tan in color, the second story has off white colored siding and blue colored window shutters.  To the right of the driveway is a wooden staircase which leads up to a wrap around deck on the second story.  At the top of the staircase is a door to left. The other side of the residence faces the bay.



1



Bode00088

10-3798 JKB

## ATTACHMENT "B"

### Items to be Seized

The following items to be seized constitute evidence of violations of Title 18, United States Code, Sections 2252A(a)(2) and 2252A(a)(5)(B), which may be found at the Subject Premises:

I.   Computer(s), computer hardware, software, related documentation, passwords, data security devices (as described below), videotapes, video recording devices, video recording players, monitors, and or televisions, flatbed scanners, and data where instrumentalities of and will contain evidence related to this crime.  The following definitions apply to the terms as set out in this affidavit and attachment:

(1)  Computer hardware: Computer hardware consists of all equipment, which can receive, capture, collect analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or date.  Hardware includes any date-processing devices (including but not limited to central processing units; internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including but not limited to keyboards, printer, video display monitors, and related communications devices such as cables and connections), as well as any devices mechanisms, or parts that can be used to restrict

1

Bode00089)

10-3798 JKD

access to computer hardware (including but not limited to physical keys and locks).

(2)   Computer Software: Computer software is digital information, which can be interpreted by a computer and any of its related components to direct the way they work.  Software is stored in electronic, magnetic, or other digital form.  It commonly includes programs to run operating systems, applications, and utilities.

(3)   Documentation: Computer-related documentation consists of written, recorded, printed, or electronically stored material, which explains or illustrates how to configure or use computer hardware, software, or other related items.

(4)   Passwords and Data Security Devices: Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation or data.  Data security devices may consist of hardware, software or other programming code.  A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touches.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected date to make

Bode00090

10-3798 JKB

it inaccessible or unusable, as well as reverse the progress to restore it.

II.   The residence and any computers found on the premises may be searched for the following items:

1.   Any and all notes, documents, records, or correspondence pertaining to child pornography as defined under Title 18, United States Code, Section 2256(8).

2.   Any and all correspondence identifying persons transmitting, receiving or possessing, through interstate commerce including by U.S. Mails or by computer, any visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

3.   Any and all records, documents, invoices and materials that concern any accounts with any Internet Service Provider.

4.   Any and all visual depictions of minors.

5.   Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States Mails or by computer, and visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

6.   Any and all address books, names, and lists of names

3

Bode00091

10-3798 JK⊃

and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

7.   Any and all documents, records, or correspondence pertaining to occupancy at 163 Winter Harbor Drive, Ocean City, Maryland 21842.

8.   Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

9.   Any and all records relating to persuading, inducing, enticing or coercing any minor to engage in prostitution or any sexual activity in violation of the law.

Any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment, including floppy diskettes, fixed hard disks, or removable hard disk cartridges, software or memory in any form. The search procedure of the electronic data contained in computer operating software or memory devices shall include the following techniques which shall be used to minimize the risk that those conducting the search will view information not within the scope of the warrant:

4

Bode00092

10-3798 JKB

(a)   surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

(b)   "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

(c)   "scanning" storage areas to discover and possible recover recently deleted files;

(d)   "scanning"  storage areas for deliberately hidden files; or

(e)   performing key word or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

10.   If after performing these procedures, the directories, files or storage areas do not reveal evidence of child pornography or other criminal activity, the further search of that particular directory, file or storage area, shall cease.

Bode00093