IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | Criminal No. ELH-12-0158 |
| **LAURENCE J. BODE,** | * | |

\* \* \* \* \* \* \* \* \*

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION REQUESTING A FRANKS HEARING

The defendant, Laurence Bode, through undersigned counsel, submits this Memorandum of Law in support of his motion requesting for this Honorable Court to conduct a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  This Memorandum expressly incorporates herein Mr. Bode's Motion to Suppress Tangible and Derivative Evidence, supporting Memorandum of Law, and attached Exhibits.  For ease of reference, to the extent that Exhibits overlap between the two motions, this Motion will refer to the Exhibit Numbers used in the Motion to Suppress Evidence.

Mr. Bode anticipates that additional investigation between now and the hearing, as well as testimony anticipated at the hearing, will provide further support for this motion, and therefore reserves the right to supplement his briefing and arguments based on evidence presented at the hearing on April 19, 2013.

**STATEMENT OF FACTS**

Mr. Bode expressly incorporates the statement of facts contained in his Motion to Suppress Tangible and Derivative Statements and Supporting Memorandum of Law.

**ARGUMENT**

Mr. Bode is entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 165 (1978) because he has made a substantial preliminary showing that material misrepresentations, misleading statements, and material omissions, that were made deliberately or with reckless disregard for the truth, infected the search warrant affidavit. Without those misleading statements and omissions, the search warrant would not have established probable cause, and would not have survived judicial scrutiny.

I.      MR. BODE IS ENTITLED TO A *FRANKS* HEARING

   A.      The Legal Standard for a *Franks* Hearing

The Supreme Court has stated that "the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon*, 468 U.S. 897, 914 (1984). However, "that deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based." *Id.* Recognizing that "it would be an unthinkable imposition upon [a magistrate's] authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment," the Supreme Court has provided a procedure through which the veracity of a search warrant affidavit may be challenged after the warrant has issued. *Franks v. Delaware*, 438 U.S. 154, 165 (1978). When a defendant makes a substantial showing that (1) a police officer made a false statement in

a search warrant affidavit that was knowing and intentional, or in reckless disregard for the truth, and (2) the false statement was necessary to the finding of probable cause, the defendant establishes his right to further prove those allegations at an evidentiary hearing. *See Franks*, 438 U.S. at 155-56. Indeed, if a preliminary showing of falsity is made and the warrant affidavit lacks sufficient information to support a finding of probable cause once the "material that is the subject of the alleged falsity or reckless disregard is set to one side," the defendant is entitled under the Fourth and Fourteenth Amendments to a hearing. *Franks*, 438 U.S. at 171-72.

This test also applies to material omissions that intentionally or recklessly mislead the issuing judge. *See United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990); *United States v. Shorter*, 328 F.3d 167, 170 (4th Cir. 2003) (same). "By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning." *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), opinion amended, 769 F.2d 1410 (9th Cir. 1985). Thus, even if statements in the search warrant affidavit are technically true, a *Franks* hearing would still be warranted if the defendant makes the necessary preliminary showing "that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *Stanert*, 762 F.2d at 781. As the Fourth Circuit recently held, a defendant is entitled to a *Franks* hearing on a challenge to an officer's affidavit if he makes a substantial preliminary showing that the officer "omitted material facts that when included would defeat a probable cause showing," and that "the omission was designed to mislead or was made with reckless disregard of whether it would mislead." *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008).

To make the preliminary showing required to necessitate an evidentiary hearing, the defendant's "allegations of deliberate falsehood or of reckless disregard for the truth" must be more than "conclusory," they "must be accompanied by an offer of proof." *Id.* at 171.  The defendant "should point out specifically the portion of the warrant affidavit that is claimed to be false" and provide "[a]ffidavits or sworn or otherwise reliable statements of witnesses." *Id.* Generally, the focus of a *Franks* proceeding is on the misrepresentations or omissions made by the *affiant* – not those made by a third party, such as a confidential informant.  However, *Franks* extends beyond the affiant to reach any government official upon whose input the affidavit relies to establish probable cause.  *See Franks*, 438 U.S. at 164 n.6 ("[P]olice [can]not insulate one officer's deliberate misstatements merely by relaying it through an officer-affiant personally ignorant of its falsity."); *United States v. Brown*, 298 F.3d 392 (5th Cir. 2002) ("[W]e have agreed with and adopted the holding of several other circuits that a deliberate or reckless misstatement or omission by a governmental official who is not the affiant may nevertheless form the basis of a *Franks* claim.") (internal citations omitted); *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992) ("A deliberate or reckless omission by a governmental official who is not the affiant can be the basis for a *Franks* suppression.")

Thus, a defendant is entitled to a *Franks* hearing upon making a substantial preliminary showing that a government official (even if not the affiant himself) deliberately, or with reckless disregard for the truth, made material false statements or omitted material facts that, if described accurately, would have vitiated probable cause.  *See Franks*, 438 U.S. at 171-72; *United States v. Tate*, 524 F.3d 449 (4th Cir. 2008) (holding that defendant was entitled to *Franks* hearing because he made requisite preliminary showing by proffering information by affidavit that, if

true, would have invalidated search warrant).

In *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990), the Fourth Circuit noted that an officer cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation. Instead, to be material under *Franks*, an omission "must be necessary to the finding of probable cause. For an omission to serve as a basis for a hearing under *Franks*, it must be such that its inclusion in the affidavit would defeat probable cause[.]" 899 F.2d at 301 (quotation and citation omitted). At the same time, although an "investigation need not be perfect," an officer who intentionally or recklessly puts lies before a magistrate, or hides facts from him, violates the Constitution unless the untainted facts themselves provide probable cause." *Miller v. Prince George's County, MD*, 475 F.3d 621, 630-31 (4th Cir. 2007).[1]

To trigger an evidentiary hearing, the defendant must provide a detailed offer of proof. *See Franks*, 438 U.S. at 171. While the preliminary showing must be more than conclusory, it "need not satisfy the preponderance-of-the-evidence standard" that applies at the hearing. *United States v. Mares-Martinez*, 240 F. Supp.2d 803, 821 (N.D. Ill. 2002); *see United States v. Kyllo*, 37 F.3d 526, 530 (9th Cir. 1994) (reversing lower court's refusal to grant evidentiary hearing under *Franks* regarding omission of information in affidavit; noting that "[c]lear proof is not required – for it is at the evidentiary hearing itself that the defendant . . . must prove actual recklessness or deliberate falsity") (quotation omitted); *United States v. Rios*, 611 F.2d 1335, 1347-48 (10th Cir. 1979) (reversing district court's refusal to grant evidentiary hearing under *Franks*; noting that clear offer of proof is sufficient to trigger defendant's right to such hearing);

---

[1] Courts have routinely applied the same standard in reviewing both requests for *Franks* hearings and civil claims alleging unlawful searches or arrests based on misrepresentations or omissions made intentionally or with reckless disregard for the truth.

Wayne R. LaFave, 2 *Search and Seizure: A Treatise on the Fourth Amendment*, § 4.4(d) (4th ed. 2004) (recognizing that preliminary showing necessary to trigger hearing is "less, of course, than a preponderance of the evidence") (footnote omitted).[2]

At the hearing, if the defendant establishes the allegations of perjury or reckless disregard by a preponderance of the evidence, and the remaining portion of the warrant application is insufficient to establish probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.  Similarly, if at the hearing the defendant shows by a preponderance of the evidence that the affiant intentionally or recklessly *omitted* material facts, and that inclusion of the omitted information would have led to a negative finding on probable cause, "the warrant 'must be voided' and evidence or testimony gathered pursuant to it must be excluded." *Colkley*, 899 F.2d at 300 (quoting *Franks*, 438 U.S. at 156); *see United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (officer conducting drug investigation omitted from warrant application that narcotics dogs had failed to alert to drugs in Federal Express package; with omitted information, application would not have established probable cause); *United States v. McCain*, 271 F. Supp.2d 1187, 1191-96 (N.D. Cal. 2003) (affidavit's descriptions of information received from reliable source implied information came from human being rather than wiretap, which, while "literally true," was so misleading it had to be excised from consideration of probable cause; granting suppression motion because affidavit did not support search warrant apart from misleading information).

---

[2] Failing to hold a *Franks* hearing when a sufficient preliminary showing has been made is reversible error.  *See United States v. Tate*, 524 F.3d 449 (4th Cir. 2008).

The good faith exception to the exclusionary rule does not prevent suppression if the defendant prevails at his *Franks* hearing. As the Supreme Court explained in *Leon*, "[s]uppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." *Leon*, 468 U.S. at 923. A warrant that violates *Franks* is not subject to the "good faith" exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984). *See id*. at 923 (noting that a *Franks* violation would be one instance in which good faith exception would not apply); *Colkley*, 899 F.2d at 300 (same).

> **B.    The Search Warrant Affidavit for 163 Winter Harbor Drive Contained Several Material Misrepresentations and Omissions that were Made Deliberately or With Reckless Disregard for the Truth**

The search warrant affidavit for 163 Winter Harbor Drive, Ocean City, Maryland contained three essential claims: (1) that law enforcement was engaged in a lawful investigation of the Free6 website; (2) users of the chat features of the Free6 website had to pass through two warning banners, and one had been amended in 2009 to alert users that the website may disclose these communications to the authorities; and (3) Laurence Bode had distributed two images containing child pornography, and two images containing child erotica on a website.

These claims contain misrepresentations and misleading presentations of evidence, as well as missing certain essential information that makes clear that:

(1)    Law enforcement has violated the law in obtaining these alleged recordings, both by violating the wiretap act and the fourth amendment;

(2)    Law enforcement failed to disclose that the warning banner was changed by Free6

at the direction of law enforcement;[3] and

(3) Law enforcement withheld the fact that at least one of the images presented in the search warrant affidavit that was described in that document as child pornography had, less than one month earlier, been determined to have been child erotica in a meeting between the investigating agents and the prosecutor. *See* Motion to Suppress ("MTS") Exhibit 10, at 4.

In this case, Mr. Bode can amply make the required preliminary showing for a *Franks* hearing. Agent Warchol, who submitted the affidavit in support of the application for the search warrant, made both affirmative misrepresentations and omissions, made knowingly or with a reckless disregard for the truth, and which were material and essential to the finding of probable cause.

### 1. Agent Burdick and Others Violated the Wiretap Act and the Fourth Amendment with Their Active Monitoring of the Suspects

Mr. Bode incorporates the substance of his Motion to Suppress Tangible and Derivative Evidence and Supporting Memorandum of Law herein by reference, in which Mr. Bode described the reasons why law enforcement violated the Wiretap Act as well as the Fourth Amendment by the real time monitoring and capturing of his private on-line communications.

It is axiomatic that an agent's failure to disclose that a material part of her basis for

---

[3] Specifically, Agent Warchol notes that Exhibit A is child erotica. This image description matches the description of the Exhibit B image described at page 11 of the search warrant application, as well as one of the images charged in Counts One and Two. *See* MTS Exhibit 1. Note, however, that it is not entirely clear which images were shown to the reviewing court, as a ROI drafted by the search warrant affiant, shortly after the search warrant was signed, describes the two images shown to the court, and one is a different image than that described in the search warrant. Moreover, the two images described in this ROI were both described as child erotica in an earlier ROI. *Compare* Warchol ROI 006, dated 10/19/10 at 3 (MTS Exhibit 15), *with* MTS Exhibit 10 (Warchol ROI 003, dated 9/22/10).

probable cause was obtained through illegal means goes to the heart of the warrant's validity. Just as in *United States v. Tate*, 524 F.3d 449 (4th Cir. 2008), the Court of Appeals held that a *Franks* hearing was required based upon a preliminary showing that the police officer had omitted the fact that his "trash sweep" had only been made possible after he had scaled a locked gate and trespassed onto Mr. Tate's property. The officer's bland assertion in the search warrant application that the trash was easily accessible, even if literally true, could not save the search warrant as it was based on highly misleading information.

Similarly here, the search warrant application makes no mention of the fact that the investigating agents were intercepting and monitoring real time, private communications in violation of the Wiretap Act, and that they were accessing the content of private communications in violation of the Fourth Amendment. The search warrant application carefully elides some of the finer details of how it was accessing these private communications, as well as downplaying the extent to which the agents had unfettered real time access to private communications through the use of administrator privileges. The search warrant also deliberately refers to investigation of the "chat" portion of the Free6 website, without differentiating between the public and private chats, and without making clear that the agents were repeatedly intercepting and monitoring private chat communications between two individuals. Had the full circumstances of the agent's access to, and interception of, real time private communications been made known to the reviewing Judge, the probable cause determination would have been very different.

> **2.   Agent Warchol Misrepresented the Circumstances Behind the Change in the Banner Language**

In the search warrant affidavit, Agent Warchol describes the Free6 warning banners at

great length, including a footnote that on February 13, 2009, "the following language was added: 'Free6 may disclose these communications to the authorities at its discretion." *See* MTS Exhibit 1, at 5, n.2. Even though this is technically true, what is conspicuously absent from the affidavit is the fact that Agent Burdick was the one who requested such a change, or that such change was initially precipitated by a prosecutor. Moreover, it is clear that Agent Warchol knew that this change was made at the behest of Agent Burdick, as it was included in his search warrant exemplar that he sent out with his request for collateral investigation and prosecution of Mr. Bode. *See* MTS Exhibit 4 at 10, n.2. ("On February 13, 2009, Free6 added the last sentence in this warning, which states 'Free6.com may disclose these communications to the authorities at its discretion,' at SA Burdick's request."). Again, had the circumstances behind this change been made explicit, it would have affected the probable cause assessment.

      **3.     Agent Warchol Mischaracterized the Images and the other Proffered Evidence to Support Probable Cause**

In the search warrant affidavit, Agent Warchol describes two files (containing three images) that purportedly were images containing child pornography that were uploaded by Mr. Bode in the chat portions of the Free6 website (both public and private). *See* MTS Exhibit 1 at 9-11.

In addition, Agent Warchol omitted the statement contained in Agent Burdick's search warrant exemplar that "Free6 appears to be a legal website featuring adult pornography." *See* MTS Exhibit 4 at 2, instead creating the misleading impression that Free6.com was a website geared towards child pornography.

The Supreme Court's decision in *Franks* was not simply animated by a desire to deter

outright fabrications, but also omissions and misleading presentation of the facts that had the potential to distort the warrant review process.  As the *Franks* Court explained:

> [T]he hearing before the magistrate not always will suffice to discourage lawless or reckless misconduct.  The pre-search proceeding is necessarily *ex parte*, . . . [and] [t]he usual reliance of our legal system on adversary proceedings itself should be an indication that an *ex parte* inquiry is likely to be less vigorous. The magistrate has no acquaintance with the information that may contradict the good faith and reasonable basis of the affiant's allegations.  The pre-search proceeding will frequently be marked by haste, because of the understandable desire to act before the evidence disappears; this urgency will not always permit the magistrate to make an extended independent examination of the affiant or other witnesses.

438 U.S. at 169.

The officer's use of vague language in describing Agent Burdick's ongoing interception and monitoring of real time, private communications, failure to disclose Agent Burdick's role in changing the warning banner on the website (and the fact that the Agent's prior conduct had been deemed problematic by a federal prosecutor), all juxtaposed with the mischaraterization of images as child pornography (or at a minimum, failure to disclose that at least one of the two images being offered as child pornography had recently been regarded as child erotica by the prosecution team, together created a highly misleading one-sided picture of the evidence, and could only have been designed to obscure the fact that law enforcement had in fact been engaged in an unlawful investigation for more than a year.

Such selective, one-sided presentation of the facts has often been found to rise to the level of deliberate or reckless disregard for the truth, as it suggests that the officer presented the skewed version of events in an effort to mask the true and full circumstances of the information being provided.  For example, in a case recently decided by Judge Garbis in this District, the court rejected a quality immunity claim based on the following:

> Detective Cornwell omitted from his affidavit the fact that the only two eyewitnesses to the shooting known at the time, Herbert (who said he knew the shooter from high school) and Johnson, failed to identify GALE as the shooter in the photographic line-up. The omission is particularly significant because Detective Cornwell included in his affidavit the fact that Herbert, who witnessed the shooting at close range, identified the shooter as a "Chris Gale" (spelling in affidavit). The affidavit's treatment of this information is sufficient to create a plausible claim that the omission was designed to mislead the judge.

*Murphy v. Anne Arundel County,* MD, Slip Copy, 2012 WL 5463021, * 5 (D. Md. Nov. 7, 2012); *see also Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1010-14 (7th Cir. 2006)(noting that "[r]easonable avenues of investigation must be pursued especially when, as here, it is unclear who committed the crime," and citing among the police's fatal omissions the failure to advise that the sole eyewitness's physical description did not match the person arrested) (internal quotations omitted); *Bruning v. Pixler*, 949 F.2d 352, 358-60 (10th Cir. 1991)(finding deliberate or reckless disregard for the truth based in part on the police's disingenuous characterization of the victim's lack of identification of her assailant to suggest that she had in fact identified the arrestee); *Golino v. City of New Haven*, 950 F.2d 864, 867 (2d Cir. 1991)(citing as a material omission the fact that eyewitnesses described the suspect as "150 to 160 pounds" with a "thin face" and "skinny arms" when the person arrested weighed 215 pounds); *Smith v. Beseler*, Slip Copy, 2011 WL 6813226, *5 (M.D. Fla. Dec. 28. 2011)(inconsistencies in the victim's accounts should not have been omitted because they were highly relevant to probable cause analysis); (*Craig v. Chicago*, 2011 WL 1196803, *6 (N.D. Ill. Mar. 25, 2011)(fact of victim identification does not end the probable cause analysis when the police ignore exculpatory evidence, as well as information suggesting the identification was of questionable accuracy).[4]

---

[4] Several of these cases arise in the context of summary judgment motions asserting qualified immunity in alleged civil rights violations following an unlawful arrest or search. "In

The affiant's glaring omission of information regarding the actual nature of the underlying investigation speaks for itself. No reasonable police officer would have believed that he or she had the authority to obtain a search warrant to search an individual's home for evidence of child pornography, when the only basis for probable cause to search was based on violations of the Wiretap Act and the Fourth Amendment. The degree of misrepresentation is only exacerbated by the failure to disclose the conflicting views about whether one of the two child pornography images proffered to support probable cause actually constituted child pornography. That Agent Warchol left this information out of the affidavit, which any reasonable officer would understand to be important information for a probable cause analysis, on its face must be viewed as knowing and reckless. *See United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980) ("It is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself."); *Rivera v. United States*, 928 F.2d 592, 604 (2nd Cir. 1991) (same); *United States v. Vigeant*, 176 F.3d 565, 573 (1st Cir. 1999) (same).[5] The degree to which the search warrant affidavit is misleading

---

cases such as this, where a plaintiff asserts that an officer lacked probable cause to arrest because of false or misleading statements or omissions made in a warrant's supporting affidavit, courts have held that the standard set forth in [*Franks*], established with respect to suppression hearings in criminal cases, also defines the scope of qualified immunity." *Smith v. Reddy*, 882 F. Supp. 497, 499 (D. Md. 1995)(citing *Golino v. City of New Haven*, 950 F.2d 864, 871 (2d Cir.1991); *Magnotti v. Kuntz*, 918 F.2d 364, 368 (2d Cir.1990). Note that the *Smith* court drew some distinctions between the differing *Franks* analysis applied in the Fourth Circuit and other circuits, including the Second Circuit.

[5] The Fourth Circuit has questioned, but left open, the question of whether reckless disregard for the truth can be inferred from the omission of a material fact. *See United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990). Although the Court suggests that this may not be enough, several other circuit courts have found to the contrary. *See supra*. Although Mr. Sims respectfully submits that the courts are examining the issue correctly, in this particular case the number and extent of the misrepresentations and omissions involved would satisfy even the more

eliminates any possibility that the false statements and omissions could be attributed to mere mistake or negligence. *See Franks*, 438 U.S. at 171.

Finally, even if the Court does not regard any single misrepresentation or omission as itself creating or defeating probable cause, the cumulative effect of the various misrepresentations, shading of facts, and selective inclusion of information combine to create an affidavit that was intended to deceive the reviewing judge, or made with reckless disregard about whether it would so deceive the judge. *See, e.g.*, *In re Search Warrants Served on Home Health and Hospice Care, Inc.*, 121 F.3d 700, 1997 WL 545655, *8 (4th Cir. Sept. 5, 1997) (unpublished):

> [W]hile we agree that omitting the results of the 1989 investigation was alone not dispositive in eliminating probable cause, we do not believe that is the only inquiry. Where the only problem with a warrant affidavit is an omission, as was the case in Colkley, the inquiry is properly focused on whether correcting that omission will destroy probable cause. But where an omission is one of many problems with an affidavit, the inquiry must be whether correcting that omission together with all other problems will destroy probable cause. We believe that omitting the results of the 1989 investigation was material when considered in its larger context.

*See also United States v. Stout*, 641 F.Supp. 1074, 1079 (N.D. Cal. 1986)("Although considered individually none of these omissions is so material or misleading as to require an evidentiary hearing, they take on greater significance when considered together. Given the obvious deficiencies in the affidavit, it seems quite likely that had all this information been disclosed to the magistrate he would have questioned Norvell and demanded more information from him before signing the warrant. Had he done so, Norvell's answers might well have prompted him to deny the warrant application.").

---

stringent standard hinted at in *Colkley*.

Moreover, there is ample evidence that the creation of this highly misleading affidavit was done intentionally, or at least with a reckless disregard for the truth. "'Reckless disregard' can be established by evidence that an officer acted 'with a high degree of awareness of [a statement's] probable falsity,' that is, 'when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Miller v. Prince George's County, MD*, 475 F.3d 621, 627 (4th Cir. 2007) (*quoting Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir.2000)(internal quotation marks omitted). With respect to omissions, "reckless disregard" can be established by evidence that a police officer "failed to inform the judicial officer of facts [he] knew would negate probable cause." *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir.2003). *See also United States v. West*, 520 F.3d 604, 611 (6th Cir. 2008)("The fact that the affidavit prepared by Steger did not accurately reflect the facts known to him at the time the affidavit was sworn evinces a reckless disregard for the truth."); *Forest v. Pawtucket Police Dept.*, 377 F.3d 52, 58 (1st Cir.2004); *United States v. Clapp*, 46 F.3d 795, 801 n. 6 (8th Cir.1995).

The attached exhibits, as well as the Motion to Suppress and accompany Exhibits, make a substantial preliminary showing that these essential allegations in the affidavit for the search warrant were false and that the affiant knew or should have known of their falsity prior to obtaining the warrant. When the various misstatements and misleading information are purged from the affidavit, and when the material omitted information is included, no reasonable officer could have believed that what remained could constitute probable cause, and it is highly unlikely a reviewing judge would have approved it.

### III.    POLICE MAY NOT RELY ON GOOD FAITH EXCEPTION BECAUSE THEY HAD NO REASONABLE BASIS TO BELIEVE THE WARRANT WAS VALID

Whether taken alone or in combination, the significant mis representation of the agents' investigation of Free6, the failure to disclose the agent's role in changing the warning banner, the failure to disclose the uncertainty regarding whether one of the images allegedly uploaded was in fact child pornography, and the overall coyness and ambiguity of the nature and extent of the agent's access to Mr. Bode's real time private communications.  No significant discussion of *United States v. Leon*, 468 U.S. 897 (1984) is required because its holding is well understood: evidence obtained from a warrant issued without probable cause should not be suppressed unless the officer should have known that the search was illegal despite the judge's issuance of the warrant.  *See United States v. Bynum*, 293 F.3d 192, 194-95 (4th Cir. 2002).  The law enforcement authorities cannot invoke Leon good faith principles where the affidavit is so lacking in probable cause that no officer could believe it to be reasonable, where the officer intentionally or otherwise misled the issuing judge, where the issuing judge simply acted as a rubber stamp, or where the warrant is so facially deficient that executing officers could not believe it to be valid. *Id*.  *See also United States v. Doyle*, 650 F.3d 460, 476 (4th Cir. 2011); *United States v. Wilhelm*, 80 F.3d 116, 121-23 (4th Cir. 1996); *United States v. Stout*, 641 F.Supp. 1074, 1082 & n.11 (N.D. Cal. 1986).

In this instance, there are any number of problems, most significantly that the agents were acting unlawfully when they obtained the evidence that served as the probable cause for the arrest. Without repeating all that has been said before, it is clear that the probable cause statement

has been heavily manipulated. The language in the affidavit creates the sense that the agents were monitoring just public communications on Free5. For all of these reasons, the government should not be permitted to rely on the fact that the judge issued the warrant.

## CONCLUSION

For the reasons set forth in Mr. Bode's Motion to Suppress Evidence, this Memorandum of Law, and for reasons to be further developed at the motions hearing on this matter, Mr. Bode requests that this Court suppress all evidence obtained from 163 Winter Harbor Drive, Ocean City, Maryland, and to grant a hearing pursuant to *Franks v. Delaware*.

Respectfully submitted,

JAMES WYDA
Federal Public Defender
  for the District of Maryland


/s/_____
JULIE L.B. JOHNSON (#27746)
Staff Attorney
6411 Ivy Lane, Suite 710
Greenbelt, Maryland  20770
Tel:  (301) 344-0600
Fax:  (301) 344-0019
Email: julie_johnson@fd.org

/s/_____
EBISE BAYISA (#91857)
Assistant Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, Maryland  20770
Tel:  (301) 344-0600
Fax:  (301) 344-0019
Email: ebise_bayisa@fd.org